## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No.  05-30973

CHRISTOPHER GEORGE JENSEN

Debtor


CHRISTOPHER GEORGE JENSEN

Plaintiff

v.                                                      Adv. Proc. No.  05-3049

ROSANNE D. JENSEN

Defendant


## M E M O R A N D U M


**APPEARANCES:**   HODGES, DOUGHTY & CARSON, PLLC
Keith L. Edmiston, Esq.
Post Office Box 869
Knoxville, Tennessee  37901-0869
Attorneys for Plaintiff

DAVID H. JONES, ESQ.
Post Office Box 50034
Knoxville, Tennessee  37950
Attorney for Defendant


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint to Determine Dischargeability of a Debt, for Contempt, for Injunctive Relief, and for Damages (Complaint) filed by the Plaintiff/Debtor on March 24, 2005, requesting an injunction prohibiting the Defendant, Rosanne D. Jensen, from attempting to enforce certain obligations imposed upon him in the parties' divorce, requesting an award of compensatory and punitive damages for the Defendant's alleged willful violation of the automatic stay, and seeking a determination that the divorce related obligations are not nondischargeable support under 11 U.S.C.A. § 523(a)(5) (West 2004).

The trial was held on February 13, 2006. The record before the court consists of nineteen exhibits stipulated into evidence, along with the testimony of the parties.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (I), and (O) (West 1993).

## I

The parties were divorced on July 6, 2004, pursuant to the terms of a Final Judgment of Divorce (Final Judgment) entered in the Fourth Circuit Court for Knox County, Tennessee (Fourth Circuit Court). Included within the Final Judgment are the following provisions with respect to alimony and payment of debts:

> 3. <u>Alimony</u>. The Defendant [Mr. Jensen] shall pay to the Plaintiff [Mrs. Jensen] the sum of Fourteen Hundred Dollars ($1,400.00) per month as alimony in solido for three (3) years from the date of entry of this Final Judgment of Divorce.
>
> . . . .
>
> 5. <u>Debts.</u> The Defendant [Mr. Jensen] shall be responsible for any and all credit card debts up to Forty-Five Thousand Dollars ($45,000.00) as per the attached list marked as Exhibit 2.

2

. . . .

16. <u>Nondischargeability</u>.  With respect to each party's responsibility for payment of certain debts and liabilities and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a nondischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support.

TRIAL EX. 14.  The following debts were listed on Exhibit 2 to the Final Judgment and incorporated therein:  (1) $2,103.00 to Target; (2) $695.55 to Kohls; (3) $683.00 to JCPenney; (4) $2,124.00 to Sears; (5) $200.00 to Limited Too; (6) $250.00 to Old Navy; (7) $500.00 to Parisian; (8) $286.00 to Victoria's Secret; (9) $16,000.00 to Citibank; (10) $12,350.00 to MBNA; (11) $842.00 to Bank One; and (12) $13,000.00 to Chase (collectively Credit Card Debt).

On February 23, 2005, the Plaintiff filed the Voluntary Petition commencing his case under Chapter 13 of the Bankruptcy Code and listed the Defendant as an unsecured creditor holding an unliquidated claim in the amount of $43,000.00, representing the Credit Card Debt under the Final Judgment.[1]  On February 28, 2005, the Plaintiff filed a Suggestion of Bankruptcy with the Fourth Circuit Court, attaching a copy of his Chapter 13 Voluntary Petition and advising that the automatic stay was in effect.  *See* TRIAL EX. 16.  The Certificate of Service accompanying the Suggestion of Bankruptcy signed by the Plaintiff's attorney evidences that the Defendant was served with a copy. Additionally, on March 1, 2005, the Plaintiff's attorney sent a letter to the judge for the Fourth Circuit Court, explaining that because the Plaintiff had filed for bankruptcy prior to the February 25, 2005 hearing, he had been advised that due to the resulting application of the automatic stay his presence was not required.  *See* TRIAL EX. 6.  A copy of this letter was also sent to the attorney

---

[1] The Plaintiff's case was subsequently converted to Chapter 7 on July 1, 2005.

3

representing the Defendant in the parties' divorce case, Lori Fleishman.  On March 24, 2005, the

Plaintiff filed the Complaint initiating this adversary proceeding, based upon the events hereinafter

discussed.

On January 13, 2005, the Defendant filed a Petition for Contempt for Non-Payment of Credit

Card Debts (Petition for Contempt) in the Fourth Circuit Court, arguing that the Plaintiff had failed

to pay the Credit Card Debt as required by the Final Judgment.  *See* TRIAL EX. 4; TRIAL EX. 15.  A

hearing on the Petition for Contempt was scheduled for February 25, 2005, and the Plaintiff was

served with both the Petition for Contempt and the notice of hearing.  The Plaintiff did not appear

at the February 25, 2005 hearing, and after hearing testimony from the Defendant, the court made

interim rulings, which were memorialized in an Order entered on March 1, 2005.  *See* TRIAL EX. 4;

TRIAL EX. 15.  In this Order, the judge found that the Plaintiff was not in compliance with the Final

Judgment; however, because the Credit Card Debt was not clearly denominated as a support

obligation, a hearing was scheduled for March 18, 2005, for the court to determine whether the

Credit Card Debts were, in fact, support obligations.

The Defendant appeared in the Fourth Circuit Court on March 18, 2005, and she gave

testimony with respect to the question of support.  *See* TRIAL EX. 17.  Once again, the Plaintiff did

not appear.  On December 29, 2005, an Order was entered, *nunc pro tunc* to March 18, 2005, finding

that the Credit Card Debt was in the nature of support and that its payment could be enforced by the

Fourth Circuit Court through its powers of contempt, including incarceration.  *See* TRIAL EX. 18.

The Order also states that "[t]he Final Judgment of Divorce, paragraph 16, specifically sets forth that

the Defendant/Husband's debt obligations are non-dischargeable.  This language is buttressed,

4

however, by the specific finding today that the $45,000 of the credit card debts borne by the

Defendant/Husband is clearly in the nature of support and is, in fact, spousal support upon which

the Plaintiff/Wife relied." TRIAL EX. 18.

Following the March 18, 2005 hearing, the Defendant sent the following email to the

Plaintiff, dated March 22, 2005:

> Chris, It would be more benificial [sic] to you to work with the creditors right now.
> They are willing to reduce the amount of the bills up to 50%.  That is a great deal
> less money that you will be responsible for.  They are only willing to do this in the
> next day. If this isnt [sic] taken care of then you will be responsible for the full
> amount plust [sic] the extra 8000 that is from late fees and overlimit [sic] fees.. I
> would seriously arrange to pay these off and arrange it right now. You will have to
> talk to me so I can arrange it with them. They need an arrangement right now.
> Otherwise if you choose to go the higher route that is your decision but you will still
> be responsible for it . What are you going to do. Let me know tonite [sic]. because
> they all have called continuously today and need a certain decision and the money
> right now.. Rosanne

TRIAL EX. 11.  On March 23, 2005, the Plaintiff replied in an email stating that "I will forward this

to my lawyer, but as far as I am aware, my Chapter 13 has been filed with the state of TN, and you

(your debts) are included."  TRIAL EX. 11.   The Defendant replied to this email, also on March 23,

2005, by stating "Thought your lawyer would have informed you by now but, the credit card debt

was deemed support. and clarified as such.. So you cannot bankrupt it.  IT [sic] needs to be taken

care of right now."  TRIAL EX. 11.  Also on March 23, 2005, Ms. Fleishman left a voice message

for the Plaintiff's bankruptcy attorney advising him of the outcome of the March 18, 2005 hearing

in the Fourth Circuit Court.  *See* TRIAL EX. 13.

On March 30, 2005, the Defendant sent the Plaintiff another email concerning his failure to

pay the Credit Card Debt, stating as follows:

Chris, I am trying to work this out so you will not suffer as many consequences.. The credit cards are willing to settle in the next month with you for much lower amounts .. but the minimum payments need to be paid by tomorrow .. [T]hursday the 31st at 2pm .. otherwise they will go to collections and the collection people will not work with you and you will be responsible for the FULL amount of the debt .. (this is a fact chris [sic] .. it has been proven that it is support .. and that will not change) If you are wise you would pay the minimum on every card .. then you have 1 month to be able to work with them .. for instance MBNA which balance is over 14000.00 [sic] is willing to settle with you for 4 thousand .. if you pay the minimum by tomorrow 2 pm and work with them in the next month .. the total of all bills are now beyond the original 45 thousand .. due to late fees and over limit fees .. (about 8 thousand more) Chris .... it is a fact and not a threat that you are responsible for this amount and they will come after you for it and you can be incarcerated because it is a violation of a court order .. I am trying to help you not get incarcerated and to get the bills lower .. but you have to act .. and be smart about this .. the amount of all total can come down to possibly only 15 thousand total if you work with them .. otherwise if you don't [sic] do this by tomorrow .. and they go to collections .. collections will want the full amount and they WILL not negotiate .. What are you going to do ....' The number for mbna is 1 800 215 6955 ext 81879 jennifer [sic] ... another bank is 888 638-4956 ... and you have the list of the others and if you want to save yourself the money and the trouble ... I would act on this immediatley [sic] ... You are the father of my children .. I would like to prevent you from going into jail and having this follow you for the rest of your life ... but chris [sic] .. I am trying to protect my children and their home .. and this is in the judges [sic] hands .. and as far as this being a support issue .. it has been determined ... Also if you take care of it ... you wont [sic] have to take care of the future damages this will ensue .. but if not that will also be a fact.. So I am trying tohelp [sic] you .. will you takethis [sic] help ... up to you ... Remember tomorrow the 31st at 2 pm ... hope you make the right decision for yourself but mostly for your children... Rosanne

TRIAL EX. 7.  This email was followed by another, entitled "one more thing" stating "chris, [sic] just so you know .. mom and dad are facing bankrupsy [sic] .. so don't [sic] think they can help the children .. and get this turned around."  TRIAL EX. 8.

In his Complaint, the Plaintiff sought an injunction against the Defendant, prohibiting her from proceeding with any action in the Fourth Circuit Court.  Additionally, the Plaintiff avers that the Defendant's continued prosecution of her contempt action, as well as her repeated emails were willful violations of the automatic stay, entitling him to actual and punitive damages against her.

6

Finally, the Plaintiff seeks a determination that the Credit Card Debt is dischargeable.  The Plaintiff

also filed a Motion for Preliminary Injunction to prohibit the Defendant from proceeding with

contempt actions against him in the Fourth Circuit Court without modification of the automatic stay,

and on April 12, 2005, the court, upon agreement of the parties, entered an Agreed Preliminary

Injunction, enjoining the Defendant from attempting to enforce any obligations incurred in the

parties' divorce pending modification of the automatic stay or other order from the court.  *See* TRIAL

EX. 12.

## II

Because the court, for reasons hereinafter stated, has determined that the Fourth Circuit

Court's December 29, 2005 Order "entered *nunc pro tunc* March 18, 2005" holding that the Debtor's

obligation to pay the $45,000.00 Credit Card Debt was nondischargeable "spousal support" is void,

the first issue the court will address is whether the Plaintiff's request for a determination that the

Credit Card Debt awarded the Defendant under the Final Judgment is dischargeable.

The dischargeability of debts is governed by 11 U.S.C.A. § 523, which provides, in material

part:

(a) A discharge under section 727[2] . . . of this title does not discharge an individual
debtor from any debt—

. . . .

---

[2]  Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this
title[.]" 11 U.S.C.A. § 727(b) (West 2004).  This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate"
debtors of their debts and allow them a "fresh start" through this discharge.  *Buckeye Retirement, LLC v. Heil (In re
Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local
Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))).  The Plaintiff's discharge was entered on October 26, 2005.

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . .; or

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support[.]

11 U.S.C.A. § 523(a)(5). In order to promote Congressional policies favoring the enforcement of spousal and child support obligations, proof in § 523(a)(5) actions is strictly construed in favor of former spouses and children. *See Hanjora v. Hanjora (In re Hanjora)*, 276 B.R. 822, 825 (Bankr. N.D. Ohio 2001) (stating that § 523(a) "implements the general bankruptcy policy of favoring domestic support obligations over the debtor's need for a fresh start"); *Rouse v. Rouse (In re Rouse)*, 212 B.R. 885, 887 (Bankr. E.D. Tenn. 1997) (noting that although exceptions to discharge are usually narrowly construed against creditors, § 523(a)(5) is an exception). Nevertheless, the Defendant, as the non-debtor former spouse, bears the burden of proof that the Credit Card Debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991).

The Plaintiff argues that the $45,000.00 Credit Card Debt he was directed to pay under the Final Judgment is not in the nature of support and was therefore discharged on October 26, 2005,[3] pursuant to § 523(a)(5), which allows discharge of obligations incurred under a divorce decree if

---

[3] This is the date the court entered the Order granting the Debtor his discharge pursuant to 11 U.S.C.A. § 727 (West 2004).

they are not actually in the nature of support. *See Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103,

1107 (6th Cir. 1983). Whether a debt constitutes alimony, maintenance, or support under § 523(a)(5)

is a matter of federal law, but because these issues fall "within the exclusive domain of the state

courts[,]" the bankruptcy court should also rely on state law in making its determination. *Calhoun*,

715 F.2d at 1107-08. The following three-part test is used within the Sixth Circuit to decide whether

alimony, maintenance, or support is actually in the nature thereof: (1) whether the award was

intended to be support; (2) whether the award was effectively support in light of the recipient non-

debtor's present needs; and (3) whether the award was "manifestly unreasonable under traditional

concepts of support." *Calhoun*, 715 F.2d at 1109-1110.

   "In determining whether an award is actually support, the bankruptcy court should first

consider whether it 'quacks' like support," and look for the presence of "traditional state law indicia

that are consistent with a support obligation" giving rise to the conclusive presumption that the

award is support. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998). These indicia

include, but are not limited to, the following: "(1) a label such as alimony, support, or maintenance

in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption

of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage,

or eligibility for Social Security benefits." *Sorah*, 163 F.3d at 401. Other circumstances to be

considered include

> (1) the nature of the obligations assumed; (2) the structure and language of the
> parties' agreement or the court's decree; (3) whether other lump sum or periodic
> payments were also provided; (4) the length of the marriage; (5) the age, health and
> work skills of the parties; (6) whether the obligation terminates upon the death or
> remarriage of the parties; (7) the adequacy of support absent the debt assumption;
> and (8) evidence of negotiations or other understandings as to the intended purposes
> of the assumption.

*Luman v. Luman (In re Luman)*, 238 B.R. 697, 706 (Bankr. N.D. Ohio 1999); *see also Crawford v. Osborne (In re Osborne)*, 262 B.R. 435, 442-43 n.5 (Bankr. E.D. Tenn. 2001).

      If a non-debtor former spouse establishes the presence of "traditional state law indicia" and satisfies the burden of proof, it shifts to the debtor to prove the third prong of the *Calhoun* test; i.e., that "although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances." *Sorah*, 163 F.3d at 401.  In making a reasonableness determination, the bankruptcy court must give deference to the state court's findings of fact, and if it finds an award is unreasonable, it may discharge the debt only *"to the extent* that it exceeds what the debtor can reasonably be expected to pay." *Sorah*, 163 F.3d at 402-03.  "Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support, and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive." *Sorah*, 163 F.3d at 402 (citations omitted).

      The Credit Card Debt is not labeled as alimony, maintenance, or support in the Final Judgment, a fact that was acknowledged by the Fourth Circuit Court in its March 1, 2005 Order.  Nevertheless, other relevant factors and "traditional state law indicia" are present.  Primarily, the structure and language of the Final Judgment itself lends credence to the Defendant's testimony that the parties intended for the Credit Card Debt to be in the nature of support.  The Final Judgment, which was agreed upon by both parties following mediation, expressly states in the last paragraph that the parties were holding each other harmless, and that they "understand" that the obligations were "nondischargeable debt under the Bankruptcy Code," with "this obligation being part of the

10

final financial support settlement for both parties." TRIAL EX. 14.  While parties cannot generally contract away their rights in bankruptcy, including those with respect to the dischargeability of debts, *see Thornton v. Thornton (In re Thornton)*, 331 B.R. 306, 312 (Bankr. N.D. Ohio 2005), this paragraph offers a clear expression of the parties' actual intent with respect to the obligations under the Final Judgment.  Both parties were represented by attorneys during the divorce proceedings, and neither can state that they did not understand the terms of the Final Judgment.

Moreover, the fact that the majority of the Credit Card Debt consists of the Defendant's individual debts weighs in favor of a determination that payment thereof was in the nature of support.  At the time of the divorce, after approximately twenty years of marriage, the Plaintiff was a project engineer making $80,000.00 per year.  On the other side, the Defendant, who suffers from fibromyalgia and chronic fatigue syndrome, as well as chronic vertigo from a toxic reaction to a prescription drug, worked part-time as a massage therapist.   Under the Final Judgment, the Defendant was awarded the parties' home, along with assumption of the mortgage thereon.  And, although the Plaintiff agreed to pay alimony in solido in the amount of $1,400.00 per month for a period of three years, based upon the Defendant's disability and its limitations upon her working future, it appears that both parties understood that but for the Plaintiff's assumption of the Credit Card Debt, the Defendant could not make ends meet, and she was, therefore, relying upon payment of those debts as support.

The second inquiry necessitated by the *Calhoun* test is the "present needs" test, i.e., whether the award is effectively support in light of the recipient non-debtor's present needs, by examining "the practical effect of the discharge . . . upon the [non-debtor] spouse's ability to sustain daily

needs." *Calhoun*, 715 F.2d at 1109. [4]  Furthermore, because substance prevails over form under this analysis, "a bankruptcy court must also necessarily look at the actual nature of the individual loan to see if there is a real possibility that the creditors will seek redress against the non-debtor spouse on such debts." *Luman*, 238 B.R. at 709.

Again, there is little question that, in light of the Defendant's present needs, payment of the Credit Card Debt is effectively support.  Although the Plaintiff is no longer employed with the same company as during the divorce, and his salary has decreased following almost one year of unemployment, the Plaintiff is currently employed full-time with Diversified Technology Services, making $28.00 per hour, working forty hours per week.  He is an independent contractor and, thus, is responsible for his own taxes and insurance; however, he lives with his girlfriend, in a condominium she owns.  Furthermore, the Plaintiff, who is 48 years old, has a two-year associates degree in civil engineering, and he does not have any disabilities or other physical limitations inhibiting his earning potential.  In contrast, the Defendant is disabled, testifying that she cannot stand for long periods of time and, therefore, her employment opportunities are limited.  She holds licenses in cosmetology, massage therapy, and esthetics, and she is currently employed full-time with Natural Remedies, making $10.00 per hour, working 35 hours per week; however, this salary is significantly less than her monthly expenses of $4,500.00.  Additionally, the Defendant testified that she is continually receiving calls from the various credit card companies about the past due accounts, so there is no question that eventually they will seek redress against her.

---

[4] Because the award was not labeled alimony by the state court, this court must consider the *Calhoun* "present needs" test.  *See Sorah*, 163 F.3d at 401; *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 521 (6th Cir. 1993).

When "traditional state law indicia" are present and the "present needs test" is met, the burden shifts, whereby the Plaintiff must prove the third prong of the *Calhoun* test, that "although the obligation is of the *type* that may not be discharged in bankruptcy, its *amount* is unreasonable in light of the debtor spouse's financial circumstances." *Sorah*, 163 F.3d at 401. In making a reasonableness determination, the bankruptcy court must give deference to the state court's findings of fact. *Sorah*, 163 F.3d at 403. If the state court has "clearly structured the obligation as support[,]" any additional fact-finding is "inappropriate," and a debtor may not "introduce evidence regarding the resources, earning potential, and daily needs of the non-debtor spouse, either at the time the obligation arose or at the time of the bankruptcy proceeding." *Sorah*, 163 F.3d at 401-02. If it finds an award is unreasonable, the bankruptcy court may discharge the debt only *"to the extent* that it exceeds what the debtor can reasonably be expected to pay." *Sorah*, 163 F.3d at 402. "Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support, and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive." *Sorah*, 163 F.3d at 402 (citations omitted).

Based upon the record, the court finds that the $45,000.00 credit card obligation imposed upon the Plaintiff is reasonable, primarily because the parties expressly agreed to that amount during their mediation and subsequent negotiations, and because the Plaintiff has the ability to pay these debts. Additionally, the parties' marriage was not of a short duration. They had been married

13

approximately twenty years at the time of their divorce and have two minor children, sixteen and thirteen years of age, of whom the Defendant has custody.[5]

For the above reasons, the court finds that the $45,000.00 Credit Card Debt the Plaintiff is required to pay is nondischargeable, as it is actually in the nature of support, is necessary for the Defendant's support and is not an unreasonable amount.

### III

The second issue before the court is whether the Defendant has violated the automatic stay, and if so, whether the violation was willful, entitling the Plaintiff to damages. The commencement of the Plaintiff's bankruptcy case triggered the protection of the automatic stay, set forth in § 362(a), which provides, in material part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301 . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [and]

---

[5] There was, in fact, no direct testimony regarding custody of the minor children. The court, however, deduces that custody is with the Defendant because she testified that she receives child support from the Plaintiff in the amount of $1,384.00 per month. Mrs. Jensen also testified that her oldest child would be eighteen in May 2007, thus eliminating a portion of the child support she now receives.

14

(3) any act to obtain possession of property of the estate or of property from
the estate or to exercise control over property of the estate[.]

11 U.S.C.A. § 362 (West 2004).

"The protections of the stay are automatic and mandatory with the filing of the bankruptcy petition." *Enron Corp. v. Calif. ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524, 533 (Bankr. S.D.N.Y. 2004). "The scope of the automatic stay is broad and is a fundamental debtor protection that not only protects debtors but protects creditors as well[,]" *Enron Corp*. 314 B.R. at 533 (internal citations omitted), and remains in effect throughout the pendency of the bankruptcy case. *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). It applies to all debts, even those "that will ultimately be excepted from discharge, since one of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" *In re Haas*, 2004 Bankr. LEXIS 2216, at *6 (Bankr. E.D. Va. Dec. 22, 2004) (quoting H.R. REP. NO. 95-595 at 340 (1977)). The automatic stay also precludes the entry of declaratory judgments. *See Enron Corp.*, 314 B.R. at 533. Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

## A

Notwithstanding § 362(a), the Bankruptcy Code contains limited statutory actions which are excluded from the automatic stay, including § 362(b)(2)(A)(ii), for "the establishment or modification of an order for alimony, maintenance, or support" and/or § 362(b)(2)(B) for "the

collection of alimony, maintenance, or support from property that is not property of the estate[.]"

11 U.S.C.A. § 362(b)(2).  With respect to these sections,

> It is important to note that, unlike some of the other exceptions to the stay listed in section 362(b), this exception does not extend to the "commencement or continuation of an action or proceeding" to enforce an obligation.  Thus, section 362(b)(2)(B) protects an obligee who receives property on a prepetition obligation, for example, through a prior wage attachment, from claims that such receipt is improper, but does not authorize enforcement litigation against the debtor without relief from the automatic stay.  A separate provision, section 362(b)(2)(A), grants an exception for the commencement or continuation of an action or proceeding, but only for the establishment or modification of an order for alimony, maintenance or support. Proceedings to enforce such orders are conspicuously omitted from that exception and continue to be stayed, except in cases in which they are criminal in nature and permitted by section 362(b)(1).

*Lori v. Lori (In re Lori)*, 241 B.R. 353, 355 (Bankr. M.D. Pa. 1999) (quoting 3 COLLIER ON BANKRUPTCY ¶ 362.05[2], at 362-51 (15th ed. rev. 1999)); *see also Hutchison v. Birmingham (In re Hutchison)*, 270 B.R. 429, 433-34 (Bankr. E.D. Mich. 2001).

Here, however, the hearings held by the Fourth Circuit Court and the Order ultimately entered on December 29, 2005 "entered *nunc pro tunc* March 18, 2005," as a result of those hearings were not for the sole purpose of modifying the Final Judgment and, accordingly, continuation of those actions violated the automatic stay.[6]  The initial hearing in the Fourth Circuit Court on February 25, 2005, was upon the Petition for Contempt filed by the Defendant on January 13, 2005. At that time, the judge "decline[d] to issue an attachment for the [Plaintiff] as the debt he is to bear is not clearly denominated as 'support'."  TRIAL EX. 4; TRIAL EX. 15.  Only then did the Fourth

---

[6] The § 362(b)(2)(A)(ii) exception concerns both establishment and modification; however, the parties' alimony issues were established when the Final Judgment was entered on July 6, 2004, so the only issue is whether the hearings before the Fourth Circuit Court served to merely modify the existing Final Judgment.  They did not.

Circuit Court set the March 18, 2005 hearing to determine whether the Credit Card Debt was, in fact, a support obligation, after which the judge would "enter a direct Order which the [Plaintiff] must obey or be held in civil contempt." TRIAL EX. 4; TRIAL EX. 15.  Following the February 25, 2005 hearing, the Plaintiff's attorney filed the Suggestion of Bankruptcy on February 28, 2005, and on March 1, 2005, he wrote a letter to the Honorable Bill Swann, Fourth Circuit Court Judge, advising Judge Swann why the Plaintiff had not appeared at the February 25, 2005, on counsel's advice, and notifying the judge that the Plaintiff had filed for bankruptcy.  *See* TRIAL EX. 16; TRIAL EX. 6.

The Defendant testified that she received notice of the Plaintiff's bankruptcy case on March 17, 2005, the day before she was to reappear before the Fourth Circuit Court, and that she notified her attorney, Ms. Fleishman.  The Defendant also testified that Ms. Fleishman disclosed the Plaintiff's bankruptcy filing to the judge at the beginning of the March 18, 2005 hearing, but he decided to proceed nevertheless.  At the March 18, 2005 hearing, the Defendant gave testimony as to her perception of the parties' divorce arrangements and other support issues, such as her health and employment.  *See* TRIAL EX. 17.  Following the Defendant's testimony, the judge found "that the obligations shouldered by the husband are in the nature of support integrally linked in the wife's compromise of this case and in her plans at the time this outcome was negotiated."  TRIAL EX. 17. The judge then reserved ruling on issues of contempt, child support arrearage, actual damages, and attorney's fees.  *See* TRIAL EX. 17.  The Order memorializing these findings was entered on December 29, 2005, "entered *nunc pro tunc* March 18, 2005."  *See* TRIAL EX. 18.

Once the Plaintiff filed his bankruptcy petition on February 23, 2005, the automatic stay was in effect, and the Defendant was prohibited from continuing proceedings against him in the Fourth

17

Circuit Court to collect under the Final Judgment without first obtaining relief from the automatic

stay. And, although it is within the authority of the Fourth Circuit Court to make the determination

of whether the Credit Card Debt falls within the scope of § 523(a)(5) since the federal and state

courts have concurrent jurisdiction over § 523(a)(5) matters, *see Dodge v. Lacasse (In re Lacasse)*,

238 B.R. 351, 355 (Bankr. W.D. Mich. 1999), it may not do so in violation of the automatic stay.[7]

Moreover, pursuing a finding of contempt with respect to an alimony award is a violation of the

automatic stay. *See, e.g., Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 874-75 (Bankr. E.D. Tenn.

2000); *Lori*, 241 B.R. at 355-56; *In re Tweed*, 76 B.R. 636, 639 (Bankr. E.D. Tenn. 1987). Because

the hearings held on February 25, 2005, and March 18, 2005, occurred after the Plaintiff filed his

---

[7] Pursuant to § 362(c),

    (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

    (2) the stay of any other act under subsection (a) of this section continues until the earliest of—

        (A)  the time the case is closed;
        (B)  the time the case is dismissed; or
        (C)  if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C.A. § 362(c) (West 2004). Accordingly, since the Debtor did not receive his discharge until October 26, 2005 (*see supra* n.3), the Fourth Circuit Court could not exercise its concurrent § 523(a)(5) jurisdiction until after that date. *See, e.g., Carver v. Carver*, 954 F.2d 1573, 1578 (11th Circ. 1992) ("When requested, such relief [from the automatic stay] should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court."); *Fidelity Nat'l. Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 925 (Bankr. E.D. Cal. 1995) ("[P]roceedings in a nonbankruptcy court in violation of the stay are in excess of that court's judicial power insofar as they apply to the debtor. In other words, Bankruptcy Code § 362 trumps 28 U.S.C. § 1334(b) because the nonbankruptcy court lacks jurisdiction to the extent that the stay is violated.") (footnote omitted)).

18

bankruptcy case on February 23, 2005, and the purpose of those hearings was not to merely modify

the existing Final Judgment with respect to alimony, proceeding therewith was a violation of the

automatic stay, as was submitting the Order entered on December 29, 2005, which also violated the

Agreed Preliminary Injunction entered by this court on April 12, 2005.[8]

In summary, because the hearings that took place in the Fourth Circuit Court on February 25

and March 18, 2005, were held in violation of the automatic stay, both the March 1, 2005 Order and

December 29, 2005 Order "entered *nunc pro tunc* March 18, 2005," are void.  *See Easley*, 990 F.2d

at 911 ("[A]ctions taken in violation of the stay are invalid and voidable and shall be voided absent

limited equitable circumstances."[9]).

Furthermore, any attempt by the Defendant to force payment of the Credit Card Debt

violated the automatic stay and, accordingly, the Defendant violated the automatic stay by sending

emails to the Plaintiff in late March 2005, asking him to pay the Credit Card Debt.  With respect to

---

[8] A proper remedy for violation of a preliminary injunction is contempt, whereby attorneys' fees and costs are generally assessed against the party violating the injunction.  *See, e.g., Hauck Mfg. Co. v. Astec Indus., Inc.*, No. 1:03-CV-166, 2004 WL 3396122, at *10-11, 2004 U.S. Dist. LEXIS 28369, at *28-31 (E.D. Tenn. Oct. 14, 2004).  The court acknowledges, however, that it was the actions of the Defendant's attorney, Ms. Fleishman, and not the Defendant personally, that lead to the violation of the Agreed Preliminary Injunction.  Additionally, even though the automatic stay terminated by operation of law pursuant to 11 U.S.C.A. § 362(c)(2)(C) (West 2004) on October 26, 2005, when the Plaintiff received his discharge, the Agreed Preliminary Injunction expressly stated that the Defendant was prohibited from proceeding with any action in the Fourth Circuit Court "pending modification of the automatic stay . . . or other appropriate order from this Court after proper notice and a hearing."  TRIAL EX. 12.  There was no such modification or order entered by the court.

[9]        [O]nly where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.

990 F.2d at 911.  The equitable exception has no application to the Defendant's actions in the Fourth Circuit Court case.

her emails, the Defendant testified that she sent them in order to help the Plaintiff, so that he would

not have to pay the full amounts on various cards where the credit card companies were agreeable

to a substantial settlement reduction.  Nevertheless, despite her stated intentions, the Defendant sent

the emails in an attempt to force the Plaintiff into making payments on the Credit Card Debt, which

constitutes an attempt to collect from the Plaintiff and, in turn, is a violation of the automatic stay.

Irrespective of her own financial situation, the Defendant was not allowed to try and collect money

from the Plaintiff without first obtaining relief from the automatic stay.  Additionally, on April 8,

2005, the Defendant attempted to include the Plaintiff in a telephone conversation with one of the

Credit Card Debt creditors, which was recorded on his voice mail.  *See* TRIAL EX. 19.  Although the

message recorded on the Plaintiff's voice mail does not make a demand for payment, the creditor's

representative and the Defendant discuss the Plaintiff calling the creditor to work out a payment

plan.  Any attempt to collect the Credit Card Debt, including patching the Plaintiff into a telephone

conversation with a creditor concerning payment of the debt, violated the automatic stay.

**B**

Having found that the Defendant violated the automatic stay, the court must now determine

if the violation was willful, thus entitling the Plaintiff to damages.  "A violation is willful if 'the

creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case.'"

*Printup*, 264 B.R. at 173 (quoting *Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188,

194 (Bankr. E.D. Tenn. 1996)).

> A specific intent to violate the stay is not required, or even an awareness by the
> creditor that her conduct violates the stay. It is sufficient that the creditor knows of
> the bankruptcy and engages in deliberate conduct that, it so happens, is a violation
> of the stay. Moreover, where there is actual notice of the bankruptcy it must be

20

presumed that the violation was deliberate or intentional.

Satisfying these requirements itself creates strict liability. There is nothing more to
prove except damages.

*Printup*, 264 B.R. at 173 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see*

*also In re Dunning*, 269 B.R. 357, 362 (Bankr. N.D. Ohio 2001) (a willful violation of the automatic

stay does not require a specific intent to violate the stay). If the court determines that a willful

violation occurred, and the Plaintiff suffered any injury due to the violation, the statute mandates

an award of actual damages, including costs and attorney's fees, and "in appropriate cases, [an

injured debtor] may recover punitive damages." 11 U.S.C. § 362(h).[10]

The Defendant testified that she first learned that the Plaintiff filed for bankruptcy on

March 17, 2005, prior to attending the March 18, 2005 hearing, prior to sending the emails to the

Plaintiff in late March 2005, prior to the April 8, 2005 telephone call with the creditor, and prior to

submission by Ms. Fleishman and the subsequent entry of the Order dated December 29, 2005,

finding that the Credit Card Debt was in the nature of support and awarding attorney's fees.

Because the Defendant knew that the Plaintiff had filed for bankruptcy, each of these actions

constituted a willful violation of the automatic stay, irrespective of the Defendant's intentions.

"[W]hether or not the [Defendant] believed [her] actions were justified is of no consequence, all that

is necessary to trigger section 362(h) sanctions is a willful act or willful failure in violation of the

---

[10] "Punitive damages are appropriate to deter a pattern of behavior that ignores the automatic stay." *In re Kortz*, 283 B.R. 706, 713 (Bankr. N.D. Ohio 2002) (holding that "[w]hen pre-petition creditors ignore § 362 of the Code, they do so at their peril."). Additionally, "[i]f the bankruptcy court believes that the amount of such actual damages is insufficient to deter the kind of deliberate and repeated violations of the automatic stay which evident in this case, the bankruptcy court is free to impose an appropriate amount of punitive damages." *Dunning*, 269 B.R. at 363 (quoting *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1998)). Generally, an award of punitive damages requires a showing of egregious and intentional misconduct. *See, e.g., Kortz*, 283 B.R. at 713.

stay.  The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order."  *In re Timbs*, 178 B.R. 989, 997 (Bankr. E.D. Tenn. 1994) (citations omitted).

Although each of these actions constituted willful violations of the automatic stay, the Defendant argues that the Plaintiff was not injured and, accordingly, is not entitled to damages under § 362(h), which "'requires a finding of actual injury.'"  *In re Skeen*, 248 B.R. 312, 318 (Bankr. E.D. Tenn. 2000) (quoting *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir. 1998)).  However, in the context of automatic stay violations,

> [r]egarding the necessity of an "injury," the Court notes that an "injury" is broadly defined as being "a violation of another's legal right, for which the law provides a remedy."  BLACK'S LAW DICTIONARY 789 (7th ed. 1999).  The automatic stay is a legal right afforded to debtors that, in part, protects them from continued collection actions by their creditors.  H.R. REP. NO. 595, 95th Cong., 1st Sess. 174-75 (1977) (stating that "the automatic stay is one of the fundamental debtor protections ... [giving] the debtor a breathing spell from all his creditors ... [stopping] all collection efforts, all harassment, and all foreclosure actions.").  Thus, the mere violation of the automatic stay constitutes an injury to the debtor inasmuch as the creditor's violation restricts the debtor's breathing spell and subjects the debtor to continued collection efforts, possibly including harassment and intimidation.

*Jackson v. Dan Holiday Furniture, LLC (In re Jackson)*, 309 B.R. 33, 37 (Bankr. W.D. Mo. 2004).  Additionally, in this case, it was necessary for the Plaintiff to file this adversary proceeding, in part, to seek a preliminary injunction against the Defendant for continuation of the action in the Fourth Circuit Court, based upon her willful violations of the automatic stay.  It is clear that the Plaintiff did suffer a monetary injury, in the form of his attorney's fees and costs for the prosecution of the portion of this adversary proceeding concerning violation of the stay and injunctive relief.  And, although evidence as to the amounts of his attorney's fees was not presented at trial, the court routinely allows parties to file an affidavit of attorney's fees following a trial.  Therefore, the

Plaintiff shall be granted a judgment against the Defendant in the amount of his attorney's fees and costs for the portion of this adversary proceeding concerning the Defendant's violation of the automatic stay and the subsequent injunctive relief.  The court does not, however, find that an award of punitive damages is appropriate.[11]  The Plaintiff's attorney will be directed to file an affidavit within ten (10) days setting forth the attorney's fees and costs associated with the filing and prosecution of the automatic stay violation aspects of this adversary proceeding, and the Defendant shall have ten (10) days thereafter to object thereto.  The court will then fix the attorney's fees without further notice or hearing.

IV

In summary, the court finds that, because the Credit Card Debt in the amount of $45,000.00 awarded to the Defendant pursuant to the Final Judgment of Divorce between the parties and entered in the Fourth Circuit Court for Knox County, Tennessee on July 6, 2004, is in the nature of support, is effectively support based upon the Defendant's present needs, and is not unreasonable, the obligation is nondischargeable.

The court also finds that the Defendant willfully violated the automatic stay provisions of 11 U.S.C.A. § 362(a) that became effective on February 23, 2005, when the Plaintiff filed his bankruptcy case, and that the Plaintiff suffered an actual injury, in the form of his attorney's fees and costs necessitated by the filing of this adversary proceeding for violation of the automatic stay and to obtain injunctive relief.  The Plaintiff will therefore be awarded a judgment against the

---

[11] *See supra* n.10.

Defendant in the amount of the Plaintiff's attorney's fees and costs incurred in the prosecution of this adversary proceeding, but only with regards to the automatic stay violation issues.

Finally, the court, having resolved all matters in dispute, will direct that the Agreed Preliminary Injunction that issued on April 12, 2005, be dissolved.

A judgment consistent with this Memorandum will be entered.


FILED:  February 28, 2006

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE